UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------
IN RE:                                    )
                                          )         CASE NO.  10-22729 (ASD)
CAMERON D. SMITH and                      )
MARIANNE O. SMITH,                        )         CHAPTER  7
                                          )
          DEBTORS                         )
----------------------------------------------------
                                          )
EWA ZIELINSKA,                            )
                                          )
          PLAINTIFF,                      )         ADV. PRO. NO.  10-02189
                                          )
VS.                                       )
                                          )
CAMERON D. SMITH and                      )
MARIANNE O. SMITH,                        )         RE: ECF No. 22
                                          )
          DEFENDANTS.                     )
----------------------------------------------------


**MEMORANDUM OF DECISION AND ORDER GRANTING IN PART,
AND DENYING IN PART,
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND
NOTICE OF TRIAL DATE**


**I. INTRODUCTION**

On October 13, 2010, Ewa Zielinska (hereinafter, the "Plaintiff"), a creditor in the Chapter 7 bankruptcy case of Cameron D. and Marianne O. Smith, (hereinafter, collectively, the "Defendants" or "Debtors") commenced Adversary Proceeding No. 10-02189 by the filing of a Complaint *pro se,* ECF No. 1,[1] objecting to the dischargeability of

---

[1] "ECF No." refers to the docket of Adversary Proceeding No. 10-02189.

a debt allegedly owed to her by the Defendants. On March 28, 2011, the Defendants filed a *Motion for Summary Judgment*, (hereinafter, the "Motion"), ECF No. 22. For the reasons stated hereinafter, the Motion is **GRANTED** in part and **DENIED** in part.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(I).

## III. PROCEDURAL BACKGROUND

### A. Bankruptcy Case No. 10-22729

On August 6, 2010, Debtors commenced the above captioned bankruptcy case by the filing of a voluntary petition under chapter 7 of the United States Bankruptcy Code. Anthony Novak, Esq. was duly appointed as the Chapter 7 trustee. The Chapter 7 trustee filed a Report of No Distribution on September 14, 2010. The Debtors received their general discharge of debts on November 17, 2010.

### B. The Complaint (Adversary Proceeding No. 10-02189)

As is the case with many *pro se* Plaintiffs, the Complaint fails to cite to a specific statutory basis for its requested relief, and in its form and substance is not a model of clarity. The Defendants, through their attorney, filed an *Answer and Affirmative Defense* (hereinafter, the "Answer"), ECF No. 16, on December 7, 2010, in which they characterized

2

the Complaint solely as "an action to determine [nondischargeability] pursuant to 11 U.S.C. 523(a)(4)", Answer, ¶1. However, as noted hereinafter, the Defendants' characterization in their Answer of the Complaint's statutory basis for relief is not controlling.

As the Plaintiff is *pro se*, some degree of flexibility is to be afforded her in determining the nature of her claims. *Boguslavsky v. Kaplan,* 159 F.3d 715, 719 (2d Cir. 1998). "Indeed, courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party." *Id*. And, subsequent to the filing of the Answer, the Court concluded and determined that by filing the Complaint, the Plaintiff sought a determination of nondischargeability of an alleged debt "for money and/or property obtained by "false pretenses, false representation[s], or actual fraud" pursuant to Bankruptcy Code §523(a)(2)(A),[2] and a determination of nondischargeability of an alleged debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" pursuant to Bankruptcy Code §523(a)(4)" (footnote added). *Brief Memorandum and Order Denying Defendant's Motion to Strike Plaintiff's Surreply, p. 3* (hereinafter, the "Brief Memorandum and Order"). ECF No. 36.

## C. The Motion for Summary Judgment

On March 28, 2011, the Defendants filed the Motion, ECF No. 22, along with a *Memorandum of Law in Support of Defendants' Motion for Summary Judgment*, with attached *Affidavits and Exhibits* from each Defendant, ECF No. 23, a *Local Rule 56(a)(1)*

---

[2]As is transparently obvious from the quoted statutory language, the reference here should have been more specific, that is, to §523(a)(2)(A).

*Statement of Undisputed Facts,* ECF No. 25, and a *Notice to Pro Se Litigant Opposing Motion for Summary Judgment As Required By Local Rule of Civil Procedure 56(B)* (sic). ECF No. 26.  In the Motion, consistent with their Answer, the Defendants specifically characterize the Complaint as seeking to "prevent the discharge of [Plaintiff's] debt pursuant to 11 U.S.C. §(a)(4)"[3] as to both Defendants, alleging "neither Defendant had a fiduciary duty to the Plaintiff."[4]  Motion*,* p.1.  Nevertheless, the Defendants' Motion also appears, at least to a limited degree, to attack a basis for nondischargeability under §523(a)(2) by its statement that "[l]astly, the Plaintiff cannot demonstrate that fraud took place at any time – whether inside or outside a fiduciary relationship." *Id*.

The Plaintiff has filed a *Response to the Motion for Summary Judgment* (including therein a response to Defendants' Local Rule 56(a)(1) Statement), ECF No. 27, along with an *Affidavit and Exhibits,* ECF No. 28. Thereafter, the Defendants' filed a *Reply to the Plaintiff's Response to the Defendants' Motion for Summary Judgment,* ECF No. 29*,* accompanied by *Affidavits and Exhibits,* ECF Nos. 30 and 31, from each Defendant. Following that, the Plaintiff filed a Surreply, entitled a *Response to the Reply to the Plaintiff's Response to the Defendants' Motion for Summary Judgment* (hereinafter, the "Plaintiff's Surreply")*,* ECF No. 32.  In the Brief Memorandum and Order  (denying the *Defendant's Motion to Strike the Plaintiff's Surreply)*, ECF No. 36, the Defendants were permitted to file a response to the Plaintiff's Surreply.  The *Defendant's Response to the*

---

[3]It is clear that this reference is to subsection (a)(2) of 11 U.S.C. §523.

[4]As is evident from the docket, the Motion, like the Answer, was also filed before the Brief Memorandum and Order (determining, *inter alia*, that the Complaint also set forth a basis for relief under §523(a)(2).

*Plaintiff's Surreply,* ECF No. 38*,* with *Supplemental Affidavits from Cameron Smith*, ECF No. 39, and *Marianne Smith*, ECF No. 40, were filed on November 21, 2011.

## IV. DISCUSSION

### A. Summary Judgment Standards

Rule 56(c)(2), of the Federal Rules of Civil Procedure, made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7056, provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." It is well-established that "[i]n considering a motion for summary judgment, the court does not decide questions of fact, but determines only whether, after resolving any ambiguities and drawing all reasonable inferences in favor of the nonmovant, a genuine issue exists for trial." *Cadle Co. v. DiFabio (In re DiFabio)*, 314 B.R. 281, 285 (Bankr. D.Conn. 2004); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003).

### B. Findings of Fact Not in Material Dispute

Taking into account the Rule 56(a)(1) Statement filed by the Defendants, the response to the Rule 56(a)(1) Statement included in the Plaintiff's Response to Motion for Summary Judgment, together with the other relevant pleadings, affidavits and exhibits, the following facts, are undisputed, deemed undisputed and/or cannot be disputed.

The Defendant, Marianne Smith (hereinafter, "Mrs. Smith"), met the Plaintiff, Ewa

5

Zielinska, over 20 years ago when the Plaintiff started investing in mutual funds through the bank brokerage firm with which Mrs. Smith was employed at that time. After Mrs. Smith became employed by the Investment Firm of Edward Jones, the Plaintiff moved some of her mutual funds over to Edward Jones, so as to be serviced by Mrs. Smith. In 2005, the Plaintiff and Mrs. Smith had a telephone conversation which resulted in the Plaintiff contacting Mrs. Smith's husband, Defendant, Cameron Smith (hereinafter, "Mr. Smith"), about the purchase of real estate as a business investment. Mr. Smith co-owned a real estate title insurance company with Mrs. Smith in Stuart, Florida, by the name of Fast Title, Inc. Fast Title, Inc. in conjunction with Wayne B. Furlong, a real estate agent with Exit Realty and manager of an entity known as Chamaeleon, LLC. (hereinafter, "Chamaeleon"), solicited the Plaintiff's purchase of two pieces of vacant property in Charlotte County, Florida known as Lot 94 and 95, Block 34, Rotonda Villas (hereinafter, the "Two Lots"), owned by Chamaeleon. The Plaintiff was referred to Wayne Furlong by Mr. Smith.

The Plaintiff decided to purchase the Two Lots and engaged the services of Attorney Michael Maliszewski to review the two contracts of sale. Although Mrs. Smith was no longer employed by Edward Jones at the time,[5] Mrs. Smith facilitated her withdrawal of the funds necessary for the purchase from the Plaintiff's Edward Jones account with the aid of a former assistant who was still employed at Edward Jones. The sale closed on September 30, 2005. The purchase price of the Two Lots was $104,000.00. According to the tax assessor for Charlotte County, in 2005 the assessed value of the Two Lots was $24,856.00. According to the closing documents, Fast Title, Inc. was paid $340.00 for

---

[5] The Plaintiff remained her client with regard to her retirement funds.

6

services as settlement agent to close on the Two Lots. On the same day that the Plaintiff purchased the Two Lots from Chamaeleon, Chamaeleon transferred by quit-claim deed to Fast Title, Inc., five other nearby lots, characterized as Lots 231 and 250, Block 30 and Lots 38, 58 and 97 Block 34, Rotonda Villas, Charlotte County, Florida (hereinafter, the "Five Lots").

As a condition of the Plaintiff purchasing the Two Lots, Mr. Smith agreed in a letter dated September 27, 2005, to repurchase the Two Lots for the full price of $52,000.00 per lot, provided a licensed realtor acting on behalf of the Plaintiff was unable to sell the Two Lots within 6 months of the purchase date. The Plaintiff engaged the services of Wayne Furlong in attempting to sell the lots but was unsuccessful, property values in Florida having dropped significantly in the months following the closing. Thereafter, in a letter dated September 7, 2006 from her attorney, Jeffrey Coleman, the Plaintiff demanded that Mr. Smith repurchase the Two Lots as he had agreed to do. Mr. Smith did not repurchase the lots, and in August 2007, the Plaintiff filed a complaint against Mrs. Smith with the Financial Industry Regulation Authority (hereinafter, "FINRA"), alleging "Unsuitable Recommendations" and the "Sale of unregistered securities."

On October 4, 2007, the Plaintiff and Defendants entered into a "Confidential Settlement and General Release Agreement" (hereinafter, the " Settlement Agreement"), whereby, in general terms, the Defendants agreed pay to the Plaintiff's attorney on the Plaintiff's behalf, the sum of $20,000 immediately (of which $1,500 was to be retained as attorneys' fees) and make monthly payments of $1,691.97 to the Plaintiff for thirteen months; thereafter pay the Plaintiff an additional $10,000 and make monthly payments of

7

$1,420.90 until the debt was paid in full. In consideration for the payments, the Plaintiff agreed to give the Defendants a General Release, withdraw her FINRA complaint, continue to market her Two Lots and, if sold, give the Defendants credit against the balance of the debt. If the Two Lots were not sold by the time the Defendants had fully paid the promissory note, then the Plaintiff agreed to convey the Two Lots to the Defendants.

Following execution of the Settlement Agreement and payment of the $20,000, the Plaintiff sent to the Defendants a copy of an email she claimed she sent to FINRA indicating that she no longer wished to proceed on her complaint. For several months thereafter, the Defendants made the payments required by the Settlement Agreement but then ceased. On May 7, 2008, FINRA notified the Plaintiff and Mrs. Smith, in relevant part, that "based on our assessment of the information, FINRA has closed its investigation of this matter. If new information develops, FINRA may re-open its investigation. . . . It is our view that a determination by FINRA not to take action against a FINRA member or a member's associated person has no evidentiary weight in any mediation, arbitration, or judicial proceeding that you have filed or may file." Supplemental Affidavit of Marianne O. Smith, Exh B (Letter dated May 7, 2006); *see also* Plaintiff's Response to Motion for Summary Judgment, ¶24, ECF No. 27; Defendant's Local Rule 56(a)1 Statement of Undisputed Facts, ¶28, ECF No. 25, Affidavit of Marianne O. Smith, ¶13, ECF No. 23-1.

Following the Defendants' default under the Settlement Agreement, in July 2008, the Defendants offered to transfer by warranty deed to the Plaintiff three of the Five Lots Fast Title had received by quit claim deed several years earlier, as a full settlement of the payment default. The Plaintiff was not told that several years of taxes were due on the lots.

(Eventually, the lots were sold by the county in a tax sale). The Plaintiff did not accept the Defendants offer and in 2009 brought suit against the Defendants in the Circuit Court for Pinellas County, Florida, Case No. 09-006050-CI-007. On March 8, 2010, a Final Summary Judgment was entered by that court in favor of the Plaintiff in the amount of $99,504.29. Thereafter, on July 1, 2010, the court entered a Final Judgment Awarding Attorney's Fees and Costs totaling $6,477.00. On August 2, 2010, the Florida judgments were domesticated by the Superior Court of the State of Connecticut and a judgment was entered in favor of the Plaintiff, Superior Court, Judicial District at Hartford, Case No. HHD-CV10-4051773-S. As noted above, the Debtors filed Chapter 7 bankruptcy on August 6, 2010.

### *C. Sections 523(a)(2)(A) and (4) (Exceptions to Discharge)*

Bankruptcy Code §523 sets forth the exceptions to discharge under the Bankruptcy Code and states in relevant part,

> (a)   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny . . . .

"Exceptions to discharge must be strictly construed in favor of the Debtor in order to effectuate the fresh start policy of bankruptcy. The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence.

9

*Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991)." (citations omitted). *May v. Lyon (In re Lyon)*, 348 B.R. 9, 22 (Bankr. D. Conn. 2006).

### 1. Fiduciary Capacity Under §523(a)(4)(A).

The question of whether a debt may be held non-dischargeable as a debt "for fraud or defalcation while acting in a fiduciary capacity," is only reached "when the threshold determination that the debtor acted in a fiduciary capacity has been made." *The Andy Warhol Found. for Visual Arts, Inc., v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999).

> Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law. For example, state law can be an important factor in determining whether someone acted in a fiduciary capacity under Section 523(a)(4) . . . . On the other hand, there are federal limits on the ability of state law to expand the effects of this provision. *See, e.g.*, *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994) ("If . . . a fiduciary is anyone whom a state calls a fiduciary . . . states will have it in their power to deny a fresh start to their debtors by declaring all contractual relations fiduciary."). As a general matter, therefore, federal law sets the outer boundaries of the defalcation exception, while state law may, through lesser or greater regulation of fiduciary obligations, affect the application of the provision.

*Id*. at 166-167. (citations omitted).

It is accepted that a debtor acts in a fiduciary capacity under §523(a)(4) if he serves under a technical[6] or express trust[7]. *Artis v. West (In re West)*, 339 B.R. 557 (Bankr.

---

[6]Generally, a technical trust is said to arise as a result of defined obligations imposed upon the debtor by statute or common law. *Allen v. Romero*, 535 F.2d 618 (10th Cir. 1976); *Nevels v.Caples (In re Caples)*, 454 B.R. 191 (Bankr. N.D. Ala. 2011).

[7]"An express trust is initiated by one entity's transfer of property to another entity coupled with a manifestation of an intention to create a trust." *First American Title Ins. Co. v. Eberhart (In re Eberhart)*, 283 B.R. 97 (Bankr. D.Conn. 2002), *affirmed*, 124 Fed. Appx. 672 (2d. Cir. 2005).

10

E.D.N.Y.2006). "Constructive or implied trusts or any trust where the existence of the trust is created merely on the basis of wrongful conduct (a trust ex maleficio) do not create a fiduciary relationship". *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998).

However, in *Hayes*, 183 F.3d at 169, the Second Circuit rejected the view that for federal law purposes, a debtor acts in a fiduciary capacity *only* as a trustee of an "express" or "technical trust" and held that certain other classes of relationships not constituting actual trusts but "in which special trust is bestowed upon a party," are also within the defalcation exception. The Plaintiff claims in her Surreply, ECF No. 32, that in referring her to Mr. Smith when she expressed an interest in purchasing real estate, Mrs. Smith was acting in her capacity as an investment advisor[8] and therefore had a fiduciary duty to act with undivided loyalty and in the Plaintiff's best financial interests, including divulging any possible conflict of interest.

Under Florida common law,[9] "the law is clear that a broker owes a fiduciary duty of care and loyalty to a securities investor." *See also*, RESTATEMENT (2d) of Agency §425 (agents employed to make, manage, or advise on investments have fiduciary obligation). *Goldbronn v. Goldbronn (In re Goldbronn)*, 263 B.R. 347 (Bankr. M.D. Fla. 2001) (*quoting*, *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1049 (11th Cir. 1987)). However, "the fiduciary obligation that arises between broker and customer is

---

[8] Mrs. Smith states in her Supplemental Affidavit, ECF. No. 40, that she is not a "registered investment advisor" but a "registered representative," but there is nothing in the record establishing whether her duty to her clients is altered by her not being a registered investment advisor or broker, or that this is a distinction that makes a difference in this proceeding.

[9] The Plaintiff has not cited any specific statutes to support her position that Mrs. Smith was acting in a fiduciary capacity when she referred her to Mr. Smith to pursue her interest in real estate investments.

11

limited to matters relevant to affairs entrusted to the broker." *SFM Holdings, LTD. v. Banc of America Securities, LLC*., 600 F.3d 1334, 1341 *(concurring opinion, quoting*, Press v. Chem. Inv. Servs. Corp*., 166 F.3d 529, 536 (2d Cir. 1999)).

Florida courts have held that the general fiduciary duty arising out of Florida common law does not create a fiduciary relationship within the meaning of §523(a)(4). *Carney v. Dupree (In re Dupree*), 336 B.R. 506 (Bankr. M.D. Fla. 2005); *Goldbronn v. Goldbronn* (*In re Goldbronn)*, 263 B.R. 347 (Bankr. M.D. Fla. 2001). *Cf. Kapila v. Talmo (In re Talmo)*, 175 B.R. 775, 778 (Bankr. S.D. Fla. 1994). (broad concept of fiduciary duty under state law does not make officers and directors fiduciaries for purposes of §523(a)(4)). However, these courts were following the settled law of the Eleventh Circuit, which holds that the relationship of the parties *must* constitute a express or technical trust for there to be a breach of a fiduciary duty within the meaning of §523(a)(4). *Quaif v. Johnson*, 4 F.3d 950 (11th Cir. 1993). To the extent that a relevant state common law creates a "special" trust relationship other than an express or technical trust, the *Hayes* decision would appear to permit a court to find a fiduciary relationship to have arisen within the meaning of §524(a)(4):

> [T]he fiduciary connection arising from a technical or express trust does not exhaust the universe of fiduciary relationships that may fall within the ambit of §523(a)(4). See *Hayes*, 183 F.3d at 168-169 . . . . [W]here an agent's obligations to a principal are heightened by state statutory or common law and the agent is in a position of power over the principal, a fiduciary relationship within the meaning of §523(a)(4) arises.

*In re Artis*, 339 B.R. at 566-567.

In making the referral to the Plaintiff for the purchase of real estate, it is not clear that Mrs. Smith was acting within the scope of their previous relationship which,

theretofore, had been limited to the purchase and sale of securities. Rather, she may have been merely facilitating the Plaintiff's involvement in a commercial transaction. She did aid the Plaintiff in liquidating assets in a brokerage account over which she had in the past some level of involvement. However, "[t]he Court must also make a finding that the debtor-defendant was *'acting* in a fiduciary capacity' with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable." See *Zohlman v. Zoldan* (*In re Zoldan)*, 221 B.R. 79, 87 (Bankr. S.D.N.Y.) *aff'd*, *Zohlman v. Zoldan*, 226 B.R. 767 (S.D.N.Y. 1998).

In examining when a broker or financial advisor is "acting in a fiduciary capacity" with a customer, courts look to whether they are merely performing ministerial services for an investor, such as buying or selling securities as directed by the customer, or exercising control over a discretionary account whereby the investment advisor makes essentially all investment decisions for the account. *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940-41 (2d Cir. 1998) ("typically a broker operating a discretionary account has a general fiduciary duty to his client whereas a broker operating a non-discretionary account has narrower obligations");[10] *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 530 (5th Cir. 1987) ("where the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's

---

[10] Among the duties owed to a client with respect to a non-discretionary account is to recommend the purchase only after studying it sufficiently to be assured of its advisability; inform the customer of the risks involved in the purchase; refrain from self-dealing; disclose any personal interest in the recommended purchase and refrain from misrepresenting any fact material to the transaction. *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987).

13

order").

The Plaintiff asserts that over an extended period of time she developed a "total trust" regarding Mrs. Smith's advice as an investment adviser, and that her decision to purchase the Two Lots was based solely on Mrs. Smith's recommendation and assurances.[11] Because the nature of the fiduciary duty varies, depending upon the relationship of the parties and the dependency of one party on the advice of the other, the determination as to whether a fiduciary duty was breached is "particularly fact-based." *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d at 530; (The evaluation "requires consideration of the degree of trust placed in the broker and the intelligence and personality of the customer.") *Clayton Brokerage Co. v. Commodity Futures Trading Comm.*, 794 F.2d 573, 582 (11th Cir.1986); (Special circumstances heightening the fiduciary responsibility in a non-discretionary account would include whether the client had impaired faculties, a closer than arms-length relationship with the broker, or is "so lacking in sophistication that de facto control is deemed to rest with the broker.") *De Kwiatkowski*

---

[11] According to the Plaintiff's Surreply, ECF No. 32:

> I completely trusted Marianne Smith. . . . I knew her for such a long time [over 15 years] and she was the daughter of the well known physician from Grosse Point, Michigan where I lived. She was a registered Investment Adviser working with a reputable company Edward-Jones. These facts help me to build a total trust to Mrs. Marianne Smith investments recommendation.

pp. 1-2, and

> My decision to purchase real estate was based solely on the Mrs. Marianne Smith recommendation and the assurance of the PROMISSARY (sic) NOTE issued by Fast Title Inc. Mrs. Marianne Smith told me that receiving the promissory note from a Fast Title Inc., the business worth over 1 million dollars, is 100% secure investment.

p. 5.

14

*v. Bear, Stearns & Co.*, 306 F.3d 1293, 1308 (2d. Cir. 2002).

In resolving the Motion, the Court must determine whether there is a dispute as to any material fact precluding a determination on the present record that the Defendants were not acting in a fiduciary capacity when the debt that is the subject of this action was incurred. The Court concludes there remain genuine issues of material fact precluding the Court from making this determination as to Mrs. Smith.

Among facts in material dispute is the extent, nature and circumstances attending advice given to the Plaintiff upon which the Plaintiff relied in deciding to purchase the properties, and the extent to which Mrs. Smith encouraged and/or helped facilitate the sale. In making that determination, the summary judgment record is inadequate. Since the Defendant Mrs. Smith, as one of the movants herein, has failed to meet her burden of establishing that there are no issues of *material* fact in dispute on the issue of whether she was acting in a "fiduciary capacity" in connection with the Plaintiff and the real estate sale, summary judgment cannot enter in her favor. The Court will need to receive evidence, hear testimony and assess the credibility of witnesses in order to make a factual finding on this issue.

By contrast, the undisputed factual record in this matter is sufficient for the Court to conclude, as it does, that as a matter of law Mr. Smith was not acting in a fiduciary capacity when he facilitated the Plaintiff's purchase of the two properties. Unlike as between the Plaintiff and Mrs. Smith, he had no previous dealings with the Plaintiff during which a fiduciary relationship had been established. *Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 52 ("'Fiduciary capacity' . . . applies only to trusts

existing prior to the wrongful conduct which created the debt."). The record is clear that whatever funds were turned over to him by the Plaintiff in his capacity as owner of a real estate title insurance company, were properly held in escrow and disbursed as intended by the Plaintiff. *Berry v. Mullin (In re Mullin)*, 91 B.R. 175 (Bankr. S.D. Fla. 1988) (An agent owes a fiduciary duty to those persons who have entrusted him with money that is earmarked for a specific purpose). Nevertheless, the fact a debtor had a fiduciary duty to another in one capacity does not necessarily extend to activities in another. 4 Collier on Bankruptcy P523.10[1][d], at p. 523-75.

"The definition of fiduciary is to be narrowly construed so that it does not reach debtor-creditor transactions in which the debtor merely violated the terms of his commercial agreement with the creditor." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y.1998). The transactions between Mr. Smith and the Plaintiff were at arms-length and as such, the prospective Plaintiff-buyer had a duty to protect her own interest. Mr. Smith had no special knowledge concerning the value of the properties that the Plaintiff could not have discovered herself by contacting the town assessor's office or hiring an appraiser. Whether Mr. Smith's overall conduct in regard to the sale was fraudulent does not affect the determination of whether he had a fiduciary duty to the Plaintiff in connection with the sale of the Two Lots.

Since the Court has held that Mr. Smith was not acting in a fiduciary capacity in facilitating the sale of the properties, the Court need not reach the question as to whether the debt owed by him to the Plaintiff was a result of "fraud or defalcation," within the meaning of §524(a)(4); *Denton v. Hyman (In re Hyman)*, 502 F.3d 61 (2d Cir. 2007).

16

### 2. *Money Obtained by "False Pretense, a False Representation or Actual Fraud" Under §523(a)(2)(A).*

As already noted, the law is clear that *pro se* parties are entitled to a degree of flexibility in pleadings, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972); *Boguslavsky v. Kaplan*, 159 F.3d at 719, and applying that flexibility, the Court has determined that the Plaintiff, through the Complaint, also seeks a determination of nondischargeability of an alleged debt "for money and/or property obtained by "false pretenses, false representation[s], or actual fraud" pursuant to Bankruptcy Code §523(a)(2)(A)." *See* page 3, *infra*. Because that determination followed the filing of the Motion, and because the Plaintiff's Complaint was not a model of clarity, it appears that the Defendants may have overlooked §523(a)(2)(A) as a basis for the Complaint, and, therefore, limited the Motion to one seeking summary judgment on a claim of nondischargeability pursuant to §523(a)(4). However, whatever the reason, the Motion, and this Memorandum of Decision, addresses only the Complaint's request for a determination under §523(a)(4). Therefore, in the context of the present Motion, the Court cannot address whether summary judgment is appropriate with respect to Plaintiff's claims against the Defendants under Bankruptcy Code §523(a)(2)(A).

### V. CONCLUSION AND ORDER

In accordance with the forgoing discussion,

**IT IS HEREBY ORDERED** that the Debtors'-Defendants' *Motion for Summary Judgment*, ECF No. 22, is **GRANTED** *in part* **AND DENIED** *in part* as follows – On the Plaintiff's claim in her Complaint under Bankruptcy Code §523(a)(4), the Motion is

**GRANTED** as to Defendant, Cameron Smith, and **DENIED** as to Defendant, Marianne Smith, and

   **IT IS FURTHER ORDERED** and **NOTICE IS HEREBY GIVEN** that trial on the Complaint insofar as it seeks a determination of nondischargeability of a debt pursuant to §523(a)(2)(A) as to both Defendants, and insofar as it seeks a determination of nondischargeability of a debt pursuant to §523(a)(4) as to the Defendant Marianne O. Smith, shall commence before this Court on Monday, June 18, 2012 at 10:00 AM.

  Entry of Judgment in favor of Cameron D. Smith in accordance with this Memorandum of Decision will be incorporated in a final Judgment to enter following the resolution of the Complaint in its entirety.

Dated: March 9, 2012                 BY THE COURT

                      Albert S. Dabrowski
                     United States Bankruptcy Judge